In re Earnest James
PEDERSON, Debtor.

Bonnie Jean STEDMAN, Appellant,

v.

Earnest James PEDERSON, Appellee.

No. 87–4319.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1989.

Decided May 30, 1989.

M. Kathryn Lee, Bellingham, Wash., for appellant.

Peter H. Arkison, Bellingham, Wash., for appellee.

Before REINHARDT, KOZINSKI and TROTT, Circuit Judges.

KOZINSKI, Circuit Judge:

In a marriage dissolution proceeding, a state court awarded Earnest James Pederson certain real property, subject to a lien in favor of his former wife, Bonnie Jean Stedman. We consider whether Pederson is entitled to avoid this lien pursuant to 11 U.S.C. § 522(f)(1) (1982) of the Bankruptcy Code.

### Facts

Bonnie Jean Stedman and Earnest James Pederson were married on September 6, 1984. Their happiness together was short-lived. Only twelve months later, in September 1985, Stedman filed for divorce. In due course, the state court entered a de-

cree of dissolution which also disposed of such property as had accrued during the marital relationship. Because Pederson had entered the marriage owning the home in which the couple lived, the court awarded him title to it. In recognition of the fact that certain improvements had been made to the home out of the marital community, however, the court awarded Stedman an $8,000 judgment against Pederson, said judgment to run as a lien against the real property. The court did not award alimony, support or maintenance to either spouse.

The dissolution decree was entered on July 3, 1986. Less than three weeks later, on July 22, Pederson filed a petition under Chapter 7 of the Bankruptcy Code. Pursuant to state law, Pederson claimed a $25,-000 homestead exemption on his residence. Pederson then moved to avoid Stedman's $8,000 judgment lien pursuant to section 522(f)(1) of the Code. This section allows a debtor to avoid a judicial lien to the extent that the lien impairs an exemption to which he is otherwise entitled. 11 U.S.C. § 522(f)(1) (1982).

The Bankruptcy Court denied Pederson's motion, reasoning that the lien on his homestead was not a judicial lien as defined in section 101(30) of the Code or, alternatively, was a judicial lien not subject to avoidance under section 522(f)(1). *In re Pederson*, No. 86–05147–Y7 (Bankr.W.D. Wash. Sept. 25, 1986). The Bankruptcy Appellate Panel reversed, ruling that the lien imposed on the property "fits precisely within the Code's definition of 'judicial lien,'" and was avoidable under section 522(f)(1). *Pederson v. Stedman (In re Pederson)*, 78 B.R. 264, 267 (Bankr. 9th Cir.1987).

## Discussion

A. The language of the Bankruptcy Code fully supports the Bankruptcy Appellate Panel's decision. Although somewhat complex, the interlocking statutory provisions lead ineluctably to the conclusion that Stedman's lien was avoidable to the extent it impaired Pederson's homestead exemp-

tion. Section 522(f)(1) allows a debtor to "avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption to which the debtor would have been entitled under [federal, state or local law] if such lien is ... a judicial lien...." 11 U.S.C. § 522(f)(1), (b). Section 101(32) of the Code, in turn, defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32) (Supp. IV 1986). Finally, section 101(33) defines "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33) (Supp. IV 1986).

In this case, the lien imposed by the Washington Superior Court is a judicial lien as defined in the Code: It was created by a judgment, as required by section 101(32), and it is a "charge against" the property awarded to Pederson to secure payment of the $8,000 debt owed to Stedman. Pederson invoked the protection of Washington's homestead statute, Wash.Rev.Code Ann. ch. 6.12 (1986)[1], against Stedman's lien. To the extent that Pederson's homestead was exempt under state law, Stedman's lien impaired an exemption to which Pederson would have been entitled under section 522(b).[2]

B. Stedman suggests a way around the statutory language, pointing to the Eighth Circuit's holding in *Boyd v. Robinson*, 741 F.2d 1112 (8th Cir.1984). In *Boyd*, a state court awarded the house to the wife subject to a $7,000 lien in favor of the husband. After the divorce decree became final, the wife filed a petition under Chapter 7 of the Code and moved to avoid the husband's lien pursuant to section 522(f)(1).

In denying the wife's motion, *Boyd* noted that a lien is avoidable under section 522(f)(1) only to the extent it attaches to an interest of the debtor in exempt property. The court reasoned that state law gave the husband a pre-existing interest in the homestead before the dissolution of the marriage.[3] *Id.* at 1114. The lien imposed

1. Chapter 6.12 was repealed and reenacted as chapter 6.13 in 1987. Washington's current homestead statute is codified in Wash.Rev.Code Ann. ch. 6.13 (Supp.1989).

2. This assumes, of course, that Pederson's equity in the property is equal to or less than the exemption, something Pederson claims but, as best we can tell, the bankruptcy court has never

determined. Insofar as there may be a dispute on this issue, it shall be resolved by the bankruptcy court on remand.

3. According to the *Boyd* court, this pre-existing interest arose from two sources: First, the husband had an inchoate property interest in the homestead that would have vested upon the wife's death; second, the husband had made

by the state court only attached to the husband's pre-existing interest in the property; it did not attach to the bankrupt wife's interest, and therefore was not avoidable under section 522(f)(1).

We decline to follow the Eighth Circuit's lead, as we believe its analysis is flawed. In *Boyd*, the husband's lien could not have attached to his pre-existing interest in the property because the state court awarded the house to the wife as her separate property before imposing the lien. At the time the court promulgated its divorce decree, any interest the husband may have had in the wife's property disappeared; since only the bankrupt wife continued to have an interest in the property, the lien of necessity attached only to her interest in it. Judge Ross, dissenting in *Boyd*, made this point clearly:

> The state court's marriage dissolution order gave the house outright to [the wife], subject to [the husband's] lien. Prior to the order, [the husband] had a pre-existing interest in the house. But that is all it was—pre-existing. [The husband's] prior interest in the house was dissolved. In its place, the court gave him a debt of $7,000 enforceable by a lien on the house. What had been a property interest became simply collateral for a debt. Since the house was simultaneously vested solely in [the wife], the lien *must* have attached to her interest in the house, for no one else possessed any ownership interest in the house.

*Boyd*, 741 F.2d at 1115 (emphasis original).

██ The Tenth Circuit likewise rejected the reasoning of *Boyd* in *Maus v. Maus,* 837 F.2d 935 (10th Cir.1988). In *Maus*, a property settlement agreement incorporated in a divorce decree awarded the wife the house subject to a lien in favor of the husband. The Tenth Circuit noted that, under state law, a court in a dissolution proceeding may award one spouse title to the residence outright. As the state court awarded the wife sole title to the residence in *Maus*, the lien attached solely to the wife's interest in the property. "This construction of the nature of marital rights ... clearly defeats the theory of a pre-existing property interest which is not extinguished by the divorce decree." *Id.* at 939. We agree.[4]

Here, the court awarded the property to Pederson as his "sole and separate property." *In re Pederson*, No. 85–3–00646–1, at 1 (Wash.Super.Ct. July 3, 1986) (decree of dissolution). The court then awarded Stedman an $8,000 judgment that "shall constitute a lien upon [Pederson's] separate property at 1601 Diamond Loop Road." *Id.* at 2. As Washington law gives the court in a divorce proceeding the discretion to award the residence outright to one spouse, Wash. Rev.Code Ann. § 26.09.080 (1986); *Brossman v. Brossman*, 32 Wash.App. 851, 650 P.2d 246 (1982), *review denied*, 98 Wash.2d 1017 (1983), and the dissolution decree clearly indicates that Stedman's lien attached to Pederson's property, the lien is avoidable under section 522(f)(1) to the extent it impairs Pederson's exemption.

C. Stedman argues that this result does not make sense and, indeed, is inconsistent with congressional intent in enacting the Bankruptcy Code. According to Stedman, if liens such as hers are avoidable in bankruptcy, state divorce courts would be hamstrung in making equitable property divisions.

---

contributions of marital and non-marital property to the acquisition and improvement of the homestead during the course of the marriage. *Boyd v. Robinson*, 741 F.2d at 1114.

**4.** Bankruptcy courts have advanced a variety of other theories for salvaging liens enforcing property settlements. Some courts, for example, have held that a lien granted pursuant to a dissolution decree cannot be avoided under section 522(f)(1) because the lien was created in the same judicial action that created the debtor's interest in property, and Congress intended that

section 522(f) only apply when the lien was imposed on property in which the debtor had a pre-existing interest. See, e.g., *In re Thomas*, 32 B.R. 11, 12 (Bankr.D.Or.1983). Other courts have held that a lien created in a settlement agreement is equivalent to a consensual security interest, rather than a judicial lien, for purposes of section 522(f)(1). See, e.g., *Hart v. Hart (In re Hart)*, 50 B.R. 956, 961–62 (Bankr.D.Nev.1985). We reject these theories as implausible and unsupported by the language of the Code.

We are, of course, without authority to second-guess policy judgments made by the political branches of the government. Absent constitutional infirmity, the choices embodied in the statutory scheme are binding. Stedman's argument that the statutory scheme works an injustice, or unduly interferes with the authority of state divorce courts, must be directed to Congress.[5]

Equally unavailing is Stedman's suggestion that Congress did not contemplate this result, and that we ought to be guided by what legislators intended when they enacted the Code. What matters is what Congress did, not what individual legislators meant to do. And what Congress did here is clear from the face of the statute it enacted. *See* pp. 782–783 *supra.* Other parts of the Code are fully consistent. Congress carefully considered and addressed the question of how dispositions of property pursuant to marital dissolutions should be treated in bankruptcy proceedings and embodied its policy for protecting spouses in section 523(a)(5). This section provides that obligations to a spouse for alimony, maintenance or support are not dischargeable in bankruptcy so long as they are "actually in the nature of alimony, maintenance, or support." 11 U.S.C. § 523(a)(5)(B) (1982). Property settlements, on the other hand, are dischargeable in bankruptcy. *See, e.g., Shaver v. Shaver,* 736 F.2d 1314 (9th Cir.1984); *Stout v. Prussel,* 691 F.2d 859 (9th Cir.1982).

The state court here did not make any award of maintenance to either party and granted Stedman the $8,000 judgment "in order to equalize the division of property in this matter." *In re Pederson,* No. 85–3–00646–1, at 3 (Wash.Super.Ct. July 3, 1986) (findings of fact and conclusions of law). Because the award was not in the nature of alimony, maintenance or support, it would have been dischargeable in bankruptcy under section 523(a)(5). Allowing Pederson to avoid a lien securing such a dischargeable property settlement is thus consistent with Congress's policy "that property settlements should be treated the same as other debts in bankruptcy." *Boyd,* 741 F.2d at 1116 (Ross, J., dissenting).

D. Stedman also suggests that Pederson is using the bankruptcy laws in an abusive or improper fashion, pointing to what she claims is a relatively low amount of unsecured debt and the short time between the dissolution decree and the bankruptcy petition. Given the posture of this case, and the limited record before us, we are in no position to determine whether Pederson abused the Code by filing this bankruptcy petition. We note, however, that the Code provides ample tools for ferreting out abuses. *See, e.g.,* 11 U.S.C. § 707 (Supp. IV 1986); *In re Kelly,* 841 F.2d 908 (9th Cir.1988). If Pederson's petition was filed in an abusive fashion, the bankruptcy court on remand will take appropriate corrective action.

AFFIRMED.

REINHARDT, Circuit Judge:

I dissent. I would follow *Boyd v. Robinson,* 741 F.2d 1112, 114–15 (8th Cir.1984), and reverse. Although the majority presents a strong argument for its position, I would give the state court decree a far less mechanistic construction. The division of property rights that *Boyd* envisions seems eminently sensible to me. Perhaps that is an unfair standard. In any event it is difficult to see how reaching a conclusion opposite to that reached by my colleagues does violence to any "policy judgment made by the political branches of government".

---

5. The problem Stedman poses does not arise in all cases where a divorce court gives one spouse a lien on the property of the other spouse. The problem only occurs where the lien is placed on property subject to an exemption and, further, where the debtor's equity is less than or equal to the exempt amount.